# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | Case No. |
| ) | |
| **SHEILA OSBORNE PARKER,** ) | |
| **Defendant.** ) | |

## INFORMATION

The United States Attorney charges:

At all times relevant to this Information:

### Introduction

1.  The Health Resources & Services Administration (HRSA) resides within the United States Department of Health and Human Services (HHS), and is an agency of the United States.  HRSA is the primary Federal agency tasked with improving access to health care by strengthening the health care workforce, building healthy communities, and achieving health equity.  Tens of millions of Americans obtain affordable health care and other help through HRSA's 100-plus programs and more than 3,000 grantees.

2.  Birmingham Health Care (BHC) is a non-profit organization located in Birmingham, Alabama. BHC's stated mission is to provide no-cost and low-cost health services to homeless and economically disadvantaged segments of the

population in and around the Birmingham, Alabama, area, including primary medical and dental care for children and adults who are underserved, homeless persons, and individuals that fall below the Federal Poverty Level.  BHC began receiving grant funds from HRSA over twenty years ago, and continued to receive grant funds at all times relevant.

3. Central Alabama Comprehensive Health, Inc. (CACH) is a non-profit organization located in Tuskegee, Alabama.  CACH's stated mission is to provide access to primary and preventative health care to individuals residing in East Alabama without regard to their ability to pay for such services.  CACH began receiving grant funds from HRSA over twenty years ago, and continued to receive grant funds at all times relevant.

4. HRSA administers a variety of grant programs designed to fund particular projects and serve specified purposes.  One such program is the Community Health Center (CHC) program. Its purpose is to provide a safety net for the nation's medically underserved populations, such as the uninsured, the poor, homeless persons, migrant and seasonal farm workers, and public housing residents by developing a health care system to provide these services.  CHCs must develop bylaws that include policy provisions that prohibit conflicts of interest by board members, employees, consultants, and those who furnish goods or services to the health center.

5. The Black Lung Clinic Program was implemented to support clinics with federal funding to seek out and provide services to active and inactive coal miners to minimize the effects of job-related respiratory impairment, improve the health status of miners exposed to coal dust, and to increase coordination with other benefit programs.

6. The American Recovery and Reinvestment Act (ARRA) afforded additional federal funding to include approximately $500 million for New Access Points (NAP) and $1.5 billion for the Capital Improvement Program (CIP). The CIP grant allows funding for projects that involve construction and alteration/ repair/ renovation, equipment, and health information technology.

7. CACH and BHC have applied for and received millions of dollars in various federal grants from HRSA, including those listed above. Federal grants administered by HRSA and HHS constitute the overwhelming majority of CACH and BHC's funding.

8. In or about 2008, BHC, located in Birmingham within Jefferson County, within the Northern District of Alabama, became the entity in charge of the fiscal affairs of CACH, located in Tuskegee, Alabama.

9. Defendant **SHEILA OSBORNE PARKER** was employed with BHC, and paid on a contract basis by CACH to perform bookkeeping and fiscal

duties for CACH.  In that capacity, **PARKER** had access to the bank accounts for CACH.

10. James Robert Parker, Defendant **PARKER**'s son, gained access to the financial resources of CACH through his mother.

## COUNTS ONE THROUGH SIX
### Wire Fraud
### 18 U.S.C. §§ 1343 & 2

1. The United States Attorney repeats and realleges the allegations contained in paragraphs 1 through 10 of the Introduction to this Information as though fully set out herein.

2. That beginning in or about August 2009, and continuing until in or about May 2011, in Jefferson County within the Northern District of Alabama, and elsewhere, the defendant,

**SHEILA OSBORNE PARKER**,

aided and abetted by others known and unknown, did knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud the United States Department of Health and Human Services (HHS), Health Resources & Services Administration (HRSA), Central Alabama Comprehensive Health, Inc. (CACH), and others, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises.

## Purpose of the Scheme and Artifice

3. It was a part of the scheme and artifice that Defendant **SHEILA OSBORNE PARKER** enlisted the assistance of her son, James Robert Parker, in her duties for CACH.

4. It was a further part of the scheme and artifice that Defendant **PARKER** facilitated her son gaining access to the bank accounts of CACH held at Regions Bank, a financial institution insured by the Federal Deposit Insurance Corporation.

5. It was a further part of the scheme and artifice that Defendant **PARKER** permitted her son, and at times instructed her son, to use those funds to make personal purchases.

6. It was a further part of the scheme and artifice that Defendant **PARKER** allowed her son to use federal funds that CACH received for its mission to instead purchase items for personal use such as marine depth finders, Lowrance units, and fishing rods and reels from various eBay sellers.

7. It was a further part of the scheme and artifice that Defendant **PARKER** observed in CACH's bank records, expenditures that were not in furtherance of CACH's mission.  **PARKER** further recognized expenditures to payees that she had seen reflected in her own bank accounts over the years when her son had access to those accounts.  Examples include payments to adult

entertainment websites, such as EPOCH.com.  **PARKER** continued to facilitate her son's use of CACH's account.

8. It was a further part of the scheme and artifice that defendant **PARKER** saw expenditures using CACH funds to "S.H." a person she knew to be her son's then-girlfriend.

9. It was a further part of the scheme and artifice that Defendant **PARKER** instructed her son to use CACH funds to purchase phones for herself and her son and to pay the service charges on those phones with Verizon.

10. It was a further part of the scheme and artifice that Defendant **PARKER** caused transfers of funds from CACH's Regions Bank account x4152 to a new Regions Bank account (x5029) in the name of CACH opened by **PARKER** with her signature.  **PARKER** then transferred funds from the CACH x5029 account she controlled to personal accounts she held at Wells Fargo bank.

11. It was a further part of the scheme and artifice that Defendant **PARKER** and her son took steps to misrepresent and conceal their expenditures knowing they were unlawful expenditures of CACH funds and did not serve the purposes for which the grant funds were obtained from HRSA

12. It was a further part of the scheme and artifice that defendant **PARKER** and her son unlawfully received approximately $116,415.98 in money, goods, and services as a result of the scheme and artifice to defraud.

## THE WIRE COMMUNICATION

13. On or about the dates set forth below, each such date constituting a separate count of this Information, in Jefferson County within the Northern District of Alabama, and elsewhere, the defendant,

## SHEILA OSBORNE PARKER,

for the purpose of executing the above-described scheme and artifice and attempting to do so, did transmit and cause to be transmitted in interstate commerce, by means of a wire communication, certain signs, signals, and communications, that is, defendant **SHEILA OSBORNE PARKER**, aided and abetted by others, caused an interstate communication between Alabama and another state to be made on each occasion listed below, in which an expenditure of funds from Regions Bank account x4152 occurred.

14. The allegations of paragraphs 1 through 13 above are realleged for each of Counts 1 through 6 below as though fully set forth therein.

| COUNT | DATE | AMOUNT | PAYEE | ACCOUNT |
|---|---|---|---|---|
| 1 | 3/8/2010 | $760.78 | Three Rivers Marine Electronics, Inc. | Regions account x4152 Card x3220 |
| 2 | 8/3/2010 | $603.95 | Alabama Power | Regions account x4152 |

7

| 3 | 10/11/2010 | $668.64 | Tire Rack | Regions account x4152 Card x1914 |
| 4 | 1/3/2011 | $65.10 | Telmate Correct | Regions account x4152 Card x9164 |
| 5 | 4/22/2011 | $328.45 | Systems & Services Technologies | Regions account x4152 |
| 6 | 5/13/2011 | $2,799.96 | Best Buy | Regions account x4152 Card x9164 |

All in violation of Title 18, United States Code, Sections 1343 & 2.

### COUNT SEVEN
### Bank Fraud
### 18 U.S.C. § 1344

1. The United States Attorney repeats and realleges the allegations contained in paragraphs 1 through 10 of the Introduction to this Information as though fully set out herein.

2. The United States Attorney repeats and realleges the allegations contained in paragraphs 1through 14 of Counts 1 through 6 of this Information as though fully set out herein.

3. In or about December 2010, within Jefferson County, within the Northern District of Alabama and elsewhere, defendant

**SHEILA OSBORNE PARKER,**

8

with the intent to defraud, did devise a scheme and artifice (a) to defraud Regions Bank, a financial institution the deposits of which were at all times insured by the Federal Deposit Insurance Corporation, and (b) to obtain moneys owned by or under the custody or control of Regions Bank, a financial institution the deposits of which were at all times insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses, representations, or promises.

4. It was part of the scheme and artifice that Defendant **PARKER**, would and did represent to Regions Bank that fraudulent transactions had occurred on CACH accounts held at Regions Bank, so that Regions Bank would replace funds stolen by Defendant **PARKER** and her son, James Robert Parker.

5. On or about December 7, 2010, in Jefferson County, within the Northern District of Alabama, defendant **SHEILA OSBORNE PARKER,** executed the scheme and artifice as set forth above, in that the defendant submitted to Regions Bank a false and fraudulent dispute to reverse approximately eighteen separate charges appearing on the CACH Regions Bank x5029 account (card x8863) based on the materially false and fraudulent pretenses, representations, and promises that the charges were not made by her or anyone acting in concert with her, that she had not benefited from the charges, and that she had made available all knowledge, ideas, or suspicions of the persons responsible.  In truth and fact,

**PARKER** knew that she and her son were responsible for the charges and concealed material information from Regions Bank.

6. By means of this scheme and artifice to defraud, **PARKER** caused a loss to the bank of approximately $14,236.99 for the charges for which she fraudulently claimed reversals.

All in violation of Section 1344 of Title 18 of the United States Code.

### COUNT EIGHT
### Bank Fraud
### 18 U.S.C. § 1344

1. The United States Attorney repeats and realleges the allegations contained in paragraphs 1 through 10 of the Introduction to this Information as though fully set out herein.

2. The United States Attorney repeats and realleges the allegations contained in paragraphs 1through 14 of Counts 1 through 6 of this Information as though fully set out herein.

3. The United States Attorney repeats and realleges the allegations contained in paragraphs 1through 6 of Count 7 of this Information as though fully set out herein

4. In or about May 2011, within Jefferson County, within the Northern District of Alabama and elsewhere, defendant

**SHEILA OSBORNE PARKER,**

with the intent to defraud, did devise a scheme and artifice (a) to defraud Regions Bank, a financial institution the deposits of which were at all times insured by the Federal Deposit Insurance Corporation, and (b) to obtain moneys owned by or under the custody or control of Regions Bank, a financial institution the deposits of which were at all times insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses, representations, or promises.

5. It was part of the scheme and artifice that Defendant **PARKER**, would and did represent to Regions Bank that fraudulent transactions had occurred on CACH accounts held at Regions Bank, so that Regions Bank would replace funds stolen by Defendant **PARKER** and her son, James Robert Parker.

6. On or about May 19, 2011, in Jefferson County, within the Northern District of Alabama, defendant **SHEILA OSBORNE PARKER,** executed the scheme and artifice as set forth above, in that the defendant submitted to Regions Bank a false and fraudulent dispute to reverse approximately twenty-one separate charges appearing on the CACH Regions Bank x5029 account (card x9164) based on the materially false and fraudulent pretenses, representations, and promises that the charges were not made by her or anyone acting in concert with her, that she had not benefited from the charges, and that she had made available all knowledge, ideas, or suspicions of the persons responsible.  In truth and fact, **PARKER** knew

that she and her son were responsible for the charges and concealed material information from Regions Bank.

7.  By means of this scheme and artifice to defraud, **PARKER** caused a loss to the bank of approximately $16,430.51 for the charges for which she fraudulently claimed reversals.

All in violation of Section 1344 of Title 18 of the United States Code.

## COUNT NINE
## FAILURE TO FILE A TAX RETURN
## 26 U.S.C. § 7203

1.  The United States Attorney repeats and realleges the allegations contained in paragraphs 1 through 10 of the Introduction to this Information as though fully set out herein.

2.  The United States Attorney repeats and realleges the allegations contained in paragraphs 1through 14 of Counts 1 through 6 of this Information as though fully set out herein.

3.  The United States Attorney repeats and realleges the allegations contained in paragraphs 1through 6 of Count 7 of this Information as though fully set out herein

4.     The United States Attorney repeats and realleges the allegations contained in paragraphs 1through 7 of Count 8 of this Information as though fully set out herein.

5.     During the calendar year 2010, Defendant **SHEILA OSBORNE PARKER**, who was a resident of Birmingham, Alabama had and received gross income of $78,480.51.  By reason of such gross income, Defendant **PARKER** was required by law, following the close of the calendar year 2010 and on or before April 18, 2011, to make an income tax return to the Internal Revenue Service Center, to a person assigned to receive returns at the local office of the Internal Revenue Service, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which she was entitled. Well knowing and believing all of the foregoing, she did willfully fail, on or about April 18, 2011, in the Northern District of Alabama and elsewhere, to make an income tax return

All in violation of Title 26, United States Code, Sections 7203.

## COUNT TEN
## FAILURE TO FILE A TAX RETURN
## 26 U.S.C. § 7203

1.     The United States Attorney repeats and realleges the allegations contained in paragraphs 1 through 10 of the Introduction to this Information as though fully set out herein.

2. The United States Attorney repeats and realleges the allegations contained in paragraphs 1 through 14 of Counts 1 through 6 of this Information as though fully set out herein.

3. The United States Attorney repeats and realleges the allegations contained in paragraphs 1 through 6 of Count 7 of this Information as though fully set out herein

4. The United States Attorney repeats and realleges the allegations contained in paragraphs 1 through 7 of Count 8 of this Information as though fully set out herein.

5. During the calendar year 2011, Defendant **SHEILA OSBORNE PARKER**, who was a resident of Birmingham, Alabama had and received gross income of $92,126.52.  By reason of such gross income, Defendant **PARKER** was required by law, following the close of the calendar year 2011 and on or before April 17, 2012, to make an income tax return to the Internal Revenue Service Center, to a person assigned to receive returns at the local office of the Internal Revenue Service, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which she was entitled. Well knowing and believing all of the foregoing, she did willfully fail, on or about April 17, 2012, in the Northern District of Alabama and elsewhere, to make an income tax return

All in violation of Title 26, United States Code, Sections 7203.

## NOTICE OF FORFEITURE
**[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]**

1.   The United States Attorney repeats and realleges the allegations contained in paragraphs 1 through 10 of the Introduction to this Information as though fully set out herein.

2.   The allegations contained in Counts 1 through 8 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

3.   Upon conviction of the offenses in violation of Title 18, United States Code, Section 1343, and Title 18, United States Code, Section 1344 set forth in Counts 1 through 8 of this Information the defendant,

**SHEILA OSBORNE PARKER**,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following: one hundred sixteen thousand, four hundred fifteen dollars, and ninety-eight cents, $116,415.98.

4.      If any of the property described above, as a result of any act or omission of the defendant:

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

        JOYCE WHITE VANCE
        United States Attorney

        /s/
        TAMARRA MATTHEWS JOHNSON
        Assistant United States Attorney

        /s/
        MELISSA KAY ATWOOD
        Assistant United States Attorney